REQUESTED BY: Dear Senator Warner:
You have provided to us amendment to LB 1002. The amendment provides for the appropriation of `an amount equal to the General Fund balance as of June 30, 1980, projected by the State Board of Equalization and Assessment pursuant to section 77-2715.01, Revised Statutes Supplement, 1980, (sic) at the board meeting held within fifteen days after adjournment at (sic) the Eighty-sixth Legislature, Second Session, . . .' Thereafter it provided certain deductions from that figure, specifically a 4% overlay and reappropriated and unencumbered amounts. Further the appropriation is limited to $32,000,000.00. You have asked whether the amendment would be a valid constitutional appropriation.
There are three problems essentially with the manner in which the amendment is written. We have already pointed out in the above quote one inaccuracy in the statutory citation. It should be the 1978 Supplement. Secondly we believe that the language `adjournment at the Eighty-sixth Legislature' should be the `adjournment of.' The primary difficulty that we envision with respect to this act is that there is at least arguably a delegation of authority to the State Board of Equalization to determine the amount of the appropriation.
Generally under section 77-2715.01, the State Board's duty at the meeting to be held pursuant to that statute is to determine the financial position of the state. A formula is established which the Board is to follow. Subsection 2 of section 77-2715.01, R.S.Supp., 1978 provides:
 "The board shall meet within fifteen days after the adjournment of each regular session of the Legislature, . . . and shall determine whether the rates for sales tax and income tax must be changed. In making such determination the board shall recalculate the requirements pursuant to the formula set forth in subsection (1) of this section, taking into consideration the appropriations and express obligations for such special session, all miscellaneous claims, deficiency bills, and all emergency appropriations."
The formula established in subsection 1 does not provide for a precise mathematical determination of the General Fund balance as it will actually exist at the expiration of the current fiscal year. A number of factors go into the formula which require judgments and projections which may or may not be born out by later facts. To that extent there is an arguable delegation of authority to determine the level of appropriation to the Board of Equalization and Assessment. We believe however that that delegation is not so great as to be clearly indefensible from a constitutional attack.
There are a number of standards set forth in the section which guide the action of the State Board and we believe that such standards are at least arguably sufficient to overcome a delegation argument. In State ex rel. Meyerv. Duxbury, 183 Neb. 302, 160 N.W.2d 88 (1968), the Nebraska Supreme Court upheld a delegation of legislative power to the Nebraska Clean Waters Commission based upon the very narrow field of operations of the Commission. In this particular instance the State Board would be acting in a very narrow capacity and that is in determining the General Fund balance at the end of the fiscal year. We must caution however that this delegation does involve the appropriation function of the Legislature which is solely entrusted to the Legislature and thus the scope of the delegation should be as severely circumscribed as possible. For instance it could simply come down to a mathematically formula to determine the amount appropriated based upon the actual amount in the General Fund balance not to exceed a set sum at the end of the fiscal year rather than an amount as determined by some other body.
A further problem which may be raised with respect to this amendment is whether or not it is a specific appropriation. Article III, section 25 of the Constitution provides in part:
 ". . . No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, . . ."
This appropriation is not specific to the extent that it cannot be determined from reading the statute exactly how much money is appropriated. However it is our view that it is sufficient to comply with the terms of the constitutional provision in that it leaves a simple mathematic calculation to determine the exact dollar amount of the appropriation. It is only where the appropriation is so indefinite that it cannot be readily determined exactly the amount of the appropriation that an appropriation fails by virtue of that constitutional provision. This problem of course is tied in with that we discussed above. To a certain extent the amount of the appropriation may depend upon the action taken by the State Board of Equalization and Assessment as the amendment is now written. On the other hand if the amendment were to provide that whatever money existed in a particular fund up to a specified amount was thereby appropriated and the sole question was to sit down and calculate that sum it would be a sufficient appropriation. Approaches such as this have been approved in early Nebraska cases. See, State v. Moore, 50 Neb. 88, 69 N.W.2d 373
(1896). In that case the court said:
 ". . . It is true that at the time of the passage of this act the amount appropriated thereby was not in dollars ascertained. . . . The uncertainty in amount arose not in regard to demands of the claimant to the fund, but in regard to the amount of the fund itself. . . ."
Thus where the limitation goes to the amount of the fund as it does here that is that money remaining up to a specified amount it is a sufficient appropriation in constitutional terms.
We hope that we have answered all of your questions in this letter. If you have others please feel free to contact us.